Bobby ROBERTS, Individually, and On Behalf of Arkansans to
Protect Police, Libraries, Education, & Services *v*. Sharon PRIEST,
Secretary of State, Respondent; John Hoyle, Individually and
On Behalf of Arkansas Taxpayers Rights Association

00-485 20 S.W.3d 376

Supreme Court of Arkansas
Opinion delivered July 7, 2000
[Petition for rehearing denied September 7, 2000.]

*Friday, Eldredge & Clark,* by: *Elizabeth Robben Murray* and *Robert S. Shafer,* for petitioner.

*Tim Humphries,* General Counsel, Arkansas Secretary of State; *Mark Pryor,* Att'y Gen., by: *Dennis R. Hansen,* Ass't Att'y Gen., for respondent.

*Oscar Stilley,* for intervenor.

ANNABELLE CLINTON IMBER, Justice. This is an original action, wherein the petitioner seeks early review of a proposed constitutional amendment pursuant to Act 877 of 1999.[1] Petitioner Bobby Roberts acts on behalf of himself and Arkansans to Protect Police, Libraries, Education & Services (APPLES), a ballot-question committee. The measure before us is a proposed amendment that would abolish all ad valorem taxes, increase the statewide sales tax, and alter the manner in which all taxes within the State are increased or decreased. Mr. Roberts charges that the popular name and ballot title are misleading, and that the proposed measure, if enacted, would be invalid. We agree that the popular name and ballot title are misleading and enjoin the Secretary of State from placing the proposed measure on the ballot.

## 1. Sufficiency of the Popular Name and Ballot Title

Our current State Constitution recognizes that various political subdivisions of this State levy ad valorem property taxes. *See* Ark. Const. art. 12, § 4; art. 14, § 3 (as amended by amends. 11, 40, and 74); art. 16, § 5 (as amended by amend. 71); art. 16. § 14; art. 19, § 27; amends. 30 and 38 (as amended by amend. 72); amend. 62. These taxes have traditionally been available to local governmental entities as security for capital improvement bonds and they are a source of revenue for public school districts throughout the State. *See, e.g.,* Ark. Code Ann. § 14-142-201 *et seq.* (Local Government Library Bond Act); § 14-164-301 *et seq.* (Local Government Bond Act); § 26-80-101 *et seq.* (Repl. 1998 & Supp. 1999). The proposed constitutional amendment would abolish the ad valorem tax in Arkansas and would raise the State sales tax rate by 1.875 percent to 6 1/2 percent effective January 1, 2001, in order to

---

[1] Act 877 is codified as Ark. Code Ann. § 7-9-501 *et seq.* (Repl. 2000).

replace revenue lost by the abolition of ad valorem taxes. It would also abolish all existing constitutional limits on sales tax rates. *See* Ark. Const. amend. 75 (imposing gross receipts (sales) tax rate of 0.125 percent) and Ark. Code Ann. §§ 26-52-301, -302 (Supp. 1999) (imposing gross receipts (sales) tax rate of 4 1/2 percent).

 The proposed amendment would alter the manner in which all taxes, whether levied by the State or a political subdivision of the State, are increased or decreased. Presently, the method of adjusting tax rates within the State depends upon the political entity and the type of tax involved. The rates for State property, excise, privilege, and personal taxes in existence at the time amendment 19 to the Arkansas Constitution was adopted may be increased by the General Assembly only if the increase is approved by a majority of the qualified electors voting in an election or, in the case of an emergency, by a three-fourths vote of the members elected to each House of the General Assembly. Ark. Const. art. 5, § 38; *ACW, Inc., v. Weiss*, 329 Ark. 302 , 947 S.W.2d 770 (1997). Statewide sales taxes, however, may be increased or decreased by a mere majority of the General Assembly. *See* Ark. Const., art. 5, § 37; *ACW, Inc., v. Weiss, supra*. A tax approved by the people through the initiative or referendum process may only be amended or repealed by a two-thirds vote of the legislative body. Ark. Const. amend. 7. City and county legislative bodies may levy sales and use taxes, but the taxes must be approved by the voters in an election. *See* Ark. Code Ann. § 26-74-201 *et seq.*; § 26-74-301 *et seq.*; § 26-74-401; § 26-75-201 *et seq.*; § 26-75-301 (Repl. 1997 & Supp. 1999). Similarly, an election of qualified voters is necessary to abolish a local sales and use tax; but a city or county may not repeal, abolish, or reduce any local sales and use tax, even by election, if that tax was levied pursuant to these provisions and was pledged as security for the payment of lease rentals or bonds so long as the leases are effective or the bonds are outstanding. Ark. Code Ann. §§ 26-74-210; 26-74-217; 26-74-310; 26-75-210; 26-75-215; 26-75-310 (Repl. 1997).

 The proposed measure before us today, if enacted, would substantially change existing law. It would eliminate ad valorem taxes entirely, and, regardless of the type of tax or political entity involved, would require a super-majority of the legislative body *plus* a majority of qualified voters to approve any tax increase. Only a simple majority of the legislative body, without an election, would

be required to approve a decrease. Local school districts, which are only authorized to levy ad valorem taxes, would lose all existing authority to levy taxes by the abolition of ad valorem taxation. *See* Ark. Const. amend. 74; Ark. Code Ann. § 26-80-101 *et seq.* (Supp. 1999). It is not our purpose to examine the relative merit or fault of the proposed changes in the law. Our function is merely to review the measure to ensure that, if it is presented to the people for consideration in a popular vote, it is presented fairly. *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988); *Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952).

The popular name of the proposed amendment reads:

AN AMENDMENT TO ABOLISH AD VALOREM PROP-
ERTY TAXES, INCREASE SALES TAX, REMOVE ALL
CONSTITUTIONAL CAPS ON SALES TAX, REQUIRE 3/4
LEGISLATIVE APPROVAL AND MAJORITY VOTER
APPROVAL OF ANY SALES TAX INCREASES AND
ALLOW LEGISLATIVE BODIES TO DECREASE SALES TAX
BY A SIMPLE MAJORITY VOTE.

The ballot title, as modified by the Office of the Attorney General, reads:

AN AMENDMENT TO THE ARKANSAS CONSTITUTION
ABOLISHING ALL AD VALOREM TAXES AND ASSESS-
MENTS UPON REAL AND PERSONAL PROPERTY BY
THE STATE OF ARKANSAS AND ALL OF ITS POLITICAL
SUBDIVISIONS AND IMPROVEMENT DISTRICTS AS OF
DECEMBER 31, 2000; PROHIBITING THE ASSESSMENT,
LEVY, AND COLLECTION OF SUCH TAXES AFTER
DECEMBER 31, 2000; DISCHARGING AS SOON AS REA-
SONABLY POSSIBLE ALL OFFICERS AND EMPLOYEES
EMPLOYED IN THE APPRAISAL, ASSESSMENT, AND
COLLECTION OF PROPERTY TAXES EXCEPT THOSE
NECESSARY FOR THE COLLECTION OF DELINQUENT
TAXES; CLOSING OR CONVERTING TO OTHER USES
ALL OFFICES RELATED TO ASSESSMENT AND COLLEC-
TION OF AD VALOREM TAXES NO LATER THAN APRIL
1, 2001; INCREASING THE RATE OF STATE SALES TAX
TO SIX AND ONE-HALF PERCENT (6-1/2 %) EFFECTIVE
JANUARY 1, 2001 FOR THE PURPOSE OF REPLACING
REVENUE LOST BY THE ABOLITION OF AD VALOREM
TAXES ON REAL AND PERSONAL PROPERTY; ABOL-
ISHING ALL EXISTING CONSTITUTIONAL LIMITS ON

SALES TAX RATES AS OF JANUARY 1, 2001; PROVIDING THAT AS OF DECEMBER 31, 2000, THE INCREASE OF ANY TAX, LICENSE, OR FEE BY THE STATE OR ANY OF ITS POLITICAL SUBDIVISIONS OR IMPROVEMENT DISTRICTS MUST HAVE THE APPROVAL OF 3/4 OF THE MEMBERS OF THE LEGISLATIVE BODY LEVYING THE TAX AND APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS OF THE POLITICAL SUBDIVISION TAXED VOTING IN A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING THAT ANY SALES TAX LEVIED OR COLLECTED BY THE STATE OR ANY OF ITS POLITICAL SUBDIVISIONS MAY BE DECREASED WITH THE APPROVAL OF A SIMPLE MAJORITY OF THE MEMBERS OF THE LEGISLATIVE BODY LEVYING THE TAX; DECLARING THAT THE PROVISIONS OF THE AMENDMENT SHOULD BE LIBERALLY CONSTRUED IN FAVOR OF THE TAXPAYER; RENDERING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; REPEALING ALL LAWS AND CONSTITUTIONAL PROVISIONS WHICH CONFLICT WITH THIS AMENDMENT; AND DECLARING THE PROVISIONS OF THIS AMENDMENT SELF-EXECUTING.

The full text of the proposed amendment is set out in an addendum to this opinion.

On April 24, 2000, the Respondent Secretary of State issued a declaration that the popular name and ballot title of the proposed measure before us are fair and accurate and that the measure, if subsequently approved, would be valid. Mr. Roberts challenges this declaration, alleging that the popular name and ballot title are misleading and that the proposed amendment, if enacted, would be invalid because it is an unconstitutional impairment of contract. These allegations are controverted by the Respondent Secretary of State and by the Intervenor John Hoyle, individually, and on behalf of Arkansas Taxpayers Rights Association, the sponsor of this initiated measure.

■ ■ "The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. amend. 7. We attach some significance to the Attorney General's modification and certification of a ballot title, but we do not defer to the

Attorney General's opinion or give it presumptive effect. *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 338 (1996); *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994).

 Ultimately, the central question to be resolved by this court is whether, in the voting booth, the voter is able to reach an intelligent and informed decision for or against the proposal and to understand the consequences of his or her vote based on the ballot title itself. *Christian Civic Action Comm. v. McCuen,* 318 Ark. 241, 884 S.W.2d 605 (1994). The standards which this court employs in making this determination are well established:

> On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy v. Hall*, 204 Ark. 785, 164 S.W.2d 884. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook v. McDonald*, 184 Ark. 740, 43 S.W.2d 356, 44 S.W.2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan v. Hall*, 198 Ark. 681, 130 S.W.2d 716. Yet, on the other hand, the ballot title must be free from "any misleading tendency, whether of amplification, of omission, or of fallacy," and it must not be tinged with partisan coloring. *Walton v. McDonald*, 192 Ark. 1155, 97 S.W.2d 81.

*Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952). The burden of proof is "upon the person or persons attacking the validity of the petition." Ark. Const. amend. 7; *Christian Civic Action Comm. v. McCuen, supra*.

 We liberally construe Amendment 7 in determining the sufficiency of ballot titles. *Christian Civic Action Comm. v. McCuen, supra*; *Bailey v. McCuen, supra*;*Becker v. Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980). But, if statements contained in the ballot title have a tendency to mislead the voter so as to thwart a fair understanding of the issues presented, the ballot title is insufficient. *Bailey v. McCuen, supra*.

 Unlike the ballot title, the popular name is primarily a useful legislative device. *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 338 (1996). Its purpose is to identify the proposal for discussion prior to election. *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988); *Arkansas Women's Political Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984); *Pafford v. Hall*, 217 Ark. 734, 233 S.W.2d 72 (1950). The popular name is not held to the same

stringent standards and need not be as explicit as a ballot title, yet it may not contain language that is misleading or partisan. *Arkansas Women's Political Caucus v. Riviere, supra; Mason & Lamb v. Jernigan,* 260 Ark. 385, 540 S.W.2d 851 (1976); *Leigh v. Hall,* 232 Ark. 558, 339 S.W.2d 104 (1960); *Pafford v. Hall, supra.* When we review the sufficiency of a ballot title and popular name, we construe the two provisions together. *Moore v. Hall,* 229 Ark. 411, 316 S.W.2d 207 (1958); *Bradley v. Hall, supra.* With these standards in mind, we must determine whether a voter called upon to exercise an intelligent vote would be able to understand the scope and import of this proposed measure when faced at the polls with only the ballot title and popular name which have been presented to this court for review. *Bradley v. Hall, supra.*

We first address the popular name as it relates to Section Two of the proposed amendment. The text of Section 2, entitled "Increase in Sales Tax," states in relevant part:

> As of December 31, 2000 no *tax, license, or fee,* levied or collected by the State of Arkansas or any of its political subdivisions, including, but not limited to county and municipal governments, school districts, improvement districts, fire, library or service districts, may be increased without the approval of 3/4 of the members of the legislative body or bodies levying the tax and the approval of a majority of the qualified electors of the political subdivision taxed, voting upon the issue in a regularly scheduled statewide election.

(Emphasis added.) Similarly, the ballot title states, with regard to Section Two: "An amendment to the Arkansas Constitution . . . providing that as of December 31, 2000, the increase of *any tax, license, or fee* by the State or any of its political subdivisions or improvement districts must have the approval of 3/4 of the members of the legislative body levying the tax and approval of a majority of the qualified electors of the political subdivision taxed voting in a regularly scheduled statewide election." (Emphasis added.)

■■■ The difficulty with Section Two arises because the popular name states: "An amendment to ... require 3/4 legislative approval and majority voter approval of *any sales tax* increases...." (Emphasis added.) This reference to "any sales tax increases" in the popular name may be consistent with the title of Section 2. However, it is clearly misleading as to the scope and import of Section Two of the proposed amendment. Voters reading the popular name

are told that the amendment to the procedures for raising taxes applies only to *sales* taxes; whereas, the ballot title refers to the amended procedures for increasing *any* taxes. When presented with these two interpretations of the same measure, the voter cannot know which provision is controlling. If the voter is unable to ascertain that the measure will affect the manner of increasing *all* forms of taxation within the State, then the voter cannot understand the scope and ultimate consequences of voting for the measure. By limiting the scope of the popular name to sales taxes only, the popular name contains language that is misleading.[2]

We next consider both the popular name and the ballot title as they relate to Section Three of the proposed amendment. The text of Section Three, entitled "Decrease in Tax," provides in relevant part that:

> *Any tax* levied or collected by the State of Arkansas or any of its political subdivisions..., including the six and one-half percent sales tax set by this amendment, may be decreased with the approval of a simple majority of the members of the legislative body or bodies levying the *sales tax*.

(Emphasis added.) However, both the popular name and the ballot title limit their scope to sales taxes only. The popular name states that the amendment would "allow legislative bodies to decrease *sales tax* by a simple majority vote." (Emphasis added.) The ballot title states that "any *sales tax* levied or collected by the State or any of its political subdivisions may be decreased with the approval of a simple majority of the members of the legislative body levying *the tax.*" (Emphasis added.)

▉ Again, by limiting the popular name and ballot title to sales taxes, the provisions are rendered misleading and insufficient. The voter cannot know the scope and import of this measure if the voter is told that it will only affect sales taxes. Sales taxes are only one of many taxes levied or collected by the State and its subdivisions. The voter is not told by either the popular name or the ballot title that the vote being cast will affect *all* forms of taxation.

---

[2] Although Mr. Hoyle characterizes this discrepancy between the popular name and the ballot title as a "purely unintentional" oversight, he acknowledges that "it doubtless would have been better if the word 'sales' in the term 'majority voter approval of any sales tax increases' had simply been omitted from the popular name."

Accordingly, we are convinced that the "sales tax" language in the popular name and ballot title has a tendency to mislead when compared with the text of Section Three.

■ ■ We note that Mr. Hoyle asserts that the drafters of the proposed amendment intended to cover only sales tax in the text of Section Three and that the omission of the word "sales" from the beginning of that section is a typographical error. Our function in the present litigation is not to interpret the amendment itself. *Mason v. Jernigan*, 260 Ark. 385, 540 S.W.2d 851 (1976). In *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988), we succinctly summarized our function in reviewing the sufficiency of the popular name and ballot title for a proposed constitutional amendment:

> It is not our function in the present litigation to interpret the amendment or explain how it is to be implemented. Neither is it our purpose in this opinion to discuss the proposal's merits or its faults. It is rather our function to see that the popular name and ballot title are a fair and honest means of presenting this measure to the people for their consideration. We must simply determine whether the sponsors of the proposed amendment have complied with the law, and whether the popular name and ballot title fairly represent the issue which will be presented to the electors.

*Id.*, 296 Ark. at 510, 758 S.W.2d at 401. Thus, we must decline to determine the intent of the drafters in connection with a purported typographical error in the text of the proposed amendment.

■ ■ Mr. Hoyle also asks this court to make a "correction" in the first part of Section Three of the proposed amendment: "The text would begin 'Any *sales* tax...' The underlined word would be added, no other changes would be made." However, Mr. Hoyle cites no authority whereby this court could rewrite or change the text of a proposed amendment. We have long held that we do not consider arguments without convincing argument or citation to authority in support, where it is not apparent without further research that these arguments are well-taken. *Brown v. Arkansas Dep't of Corr.*, 339 Ark. 458, 6 S.W.3d 102 (1999). Moreover, we have previously held that the thirty-day cure period provided in Ark. Code Ann. § 7-9-111 (Repl. 2000) applies only in the case of an adverse action on the part of the Secretary of State

and has no application to original actions in this court. *Roberts v. Priest*, 334 Ark. 244, 973 S.W.2d 797 (1998).

█ Finally, Mr. Hoyle seeks to characterize the errors in the popular name and ballot title as mere typographical omissions that escaped the attention of the drafters, the Attorney General, and the Secretary of State. We disagree. The text of the proposed amendment itself contributed to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure. For example, Section Two, which is entitled "Increase in Sales Tax", initially refers to "sales tax," but then later refers to "no tax, license, or fee." Similarly, Section Three, which is entitled "Decrease in Tax," initially refers to "any tax," but then later it refers to "sales tax." Thus, the terms "sales tax," "no tax," and "any tax" are used interchangeably within each section. These internal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself.

## 2. Timeliness

Mr. Hoyle suggests that we dismiss this original action challenging the sufficiency of the popular name and ballot title because it is untimely pursuant to Arkansas Code Annotated section 7-9-107(e)(B)(i) and (ii) (Repl. 2000). Section 7-9-107(e)(B)(i) and (ii) provides that challenges to the certification of a proposed ballot title and popular name must be filed no later than forty-five days after the Secretary of State publishes the proposed initiative. The Attorney General certified this measure to the Secretary of State on January 19, 1999, pursuant to section 7-9-107. The Secretary of State first declared it sufficient on May 24, 1999. She issued her declaration pursuant to Act 877 of 1999. After Mr. Roberts submitted a written petition to the Secretary of State on March 23, 2000, pursuant to Ark. Code Ann. § 7-9-503(a)(1), the Secretary of State issued a second declaration of sufficiency on April 24, 2000, pursuant to Act 877 of 1999. Mr. Roberts filed this original action on April 25, 2000. The record, however, does not reflect whether the forty-five day period set forth in section 7-9-107 expired before the commencement of this action on April 25, 2000.

■ In any event, we declared section 7-9-107(e)(B)(i) and (ii) unconstitutional in *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990). Subsequently, the General Assembly enacted Act 877 of 1999, under which this original action was filed.[3] Act 877 became effective on March 25, 1999, and by its terms applies to all petitions approved by the Attorney General and filed with the Secretary of State pursuant to section 7-9-107 as of March 25, 1999. Ark. Code Ann. § 7-9-506(a) (Repl. 2000). The forty-five day time-limit set out in section 7-9-107(e)(B)(i) and (ii) is superseded by Act 877, which contains no time limitation for challenges to sufficiency determinations by the Secretary of State. As noted above, the Secretary of State issued both declarations of sufficiency in accordance with Act 877; therefore, Act 877 controls in this matter. Accordingly, this original action is not untimely.

### 3. Conclusion

■ In a case of this kind, the Constitution places on this court the responsibility to ensure that the popular name and ballot title of a proposed constitutional amendment fairly represent the issue which will be presented to the electors. It is plainly our duty to declare that the popular name and ballot title of this initiated measure are fundamentally misleading in that they fail to convey an intelligible idea of the scope and import of the proposed measure. Accordingly, we hold the proposed amendment's popular name and ballot title insufficient to satisfy the requirements of Amendment 7.

Having determined that the ballot title and popular name are deficient, we need not consider the question raised about the validity of the proposed amendment under Article 2, § 17, of the Arkansas Constitution and Article 1, § 10, of the United States Constitution.

The petition is granted and the Secretary of State is enjoined from placing the proposed measure on the election ballot for the November 7, 2000, general election.

---

[3] We recently held that Act 877 of 1999 "does not run afoul of the provisions of Amendment 7 of the Arkansas Constitution." *Stilley v. Priest*, 341 Ark. 329, 337, 16 S.W.2d 251, 256 (2000). In doing so, we overruled *Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), "to the extent that [it] prevent[s] a review of the text of a popular name and ballot title and the validity of the proposed measure prefatory to the gathering of signatures." *Id.*

Smith, J., concurs.

ADDENDUM

The following is a complete text of the proposed amendment:

Be it enacted by the people of the State of Arkansas:

Section 1. ABOLITION OF PROPERTY TAX – All ad valorem taxes and assessments upon real and personal property, are hereby abolished as of December 31, 2000. No ad valorem tax or assessment shall be made, levied or collected upon property by the State of Arkansas or any of its political subdivisions, including, but not limited to, county and municipal government, school districts, improvement districts, fire, library or service districts, after December 31, 2000. All officers, employees, and agents employed in the appraisal, assessment, and collection of property taxes, except those necessary for the collection of delinquent taxes, shall be discharged as soon as reasonably possible and all offices closed or converted to other use no later than April 1, 2001.

Section 2. INCREASE IN SALES TAX – In order to replace revenue lost by the abolition of all ad valorem tax on real and personal property, state sales tax is hereby increased to six and one-half percent (6-1/2%) effective January 1, 2001. All constitutional limits on sales tax rates, existing prior to this amendment, are hereby abolished as of January 1, 2001. As of December 31, 2000 no tax, license, or fee, levied or collected by the State of Arkansas or any of its political subdivisions, including, but not limited to county and municipal government, school districts, improvement districts, fire, library or service districts, may be increased without the approval of 3/4 of the members of the legislative body or bodies levying the tax and approval of a majority of the qualified electors of the political subdivision taxed, voting upon the issue in a regularly scheduled statewide election.

Section 3. DECREASE IN TAX – Any tax levied or collected by the State of Arkansas or any of its political subdivisions including, but not limited to county and municipal government, school districts, improvement districts, fire, library or service districts, including the six and one-half percent sales tax set by this amendment, may be decreased with the approval of a simple majority of the members of the legislative body or bodies levying the sales

tax. (As used in this section the phrase "legislative body or bodies" shall include, but not be limited to the General Assembly, a Quorum Court, a City Council, a School Board or an Improvement or Service District Board.)

Section 4. SEVERABILITY, GENERAL REPEALER, LIBERAL CONSTRUCTION – The terms of this Constitutional Amendment shall be liberally construed and interpreted in favor of the tax payer. The provisions of this amendment are severable, and if any should be held wholly or partially invalid, the remainder shall stand to the extent not invalid. All laws and constitutional provisions which conflict with this amendment are hereby repealed to the extent that they conflict with this amendment. The provisions of this amendment shall be self-executing.

LAVENSKI R. SMITH, Justice, concurring. I concur in the result because of the patent inconsistencies between the ballot title, the popular name, and the text of the amendment. Its proponents concede the inconsistencies. If the drafters of the proposed amendment intend for it to mean differently than it reads, it is up to them to correct it. Neither precedent nor prudence authorize this court to edit a proposed constitutional amendment. Judges should not "edit" constitutional provisions either before or after they are made the law of the land. It is nevertheless unfortunate that any initiative of the people is not able to be voted upon by the people.