Mr. Ben McGee c/o Liberty Chevrolet 1901 East Service Road West Memphis, AR 72301
Dear Mr. McGee:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You previously submitted a similar measure, which I rejected due to ambiguities in the text of your proposed amendment. See Op. Att'y Gen. No. 2002-129. You have since made some changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO SUBSTANTIALLY REPEAL THE ANTI-LOTTERY PROVISION OF THE ARKANSAS CONSTITUTION
 Ballot Title AN AMENDMENT TO LEGALIZE AND TAX BINGO, ELECTRONIC GAMING MACHINES AND A STATEWIDE LOTTERY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both due to ambiguities that remain in the text of your proposed measure. Although you have made some changes to the text of the measure, these changes did not succeed in correcting many of the ambiguities that led to my rejection of your previous submission. These ambiguities must be corrected in order for me to analyze the sufficiency of your proposed popular name and ballot title. I am therefore unable at this time to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I will reiterate the ambiguities to which I refer:
 1. One of the primary ambiguities of your proposed measure concerns the role of the General Assembly. It is unclear precisely what power the General Assembly is to have in connection with the regulation of the activities permitted by the measure. In particular, it is unclear whether the General Assembly, after appointing the Commission pursuant to Section V of the measure, would have any further control over the Commission, or would have other authority independent of the Commission. It is unclear whether the General Assembly would have the power to engage in such activities as defining certain key terms that are not defined in the measure, formulating regulatory processes that are not set forth in the measure, and directing enforcement activities in connection with the permitted activities.
 2. Section II of your proposed measure permits the game of bingo and electronic gaming machines to be conducted by a number of listed organizations. This section identifies these organizations as "recognized as qualified 501(C) or equivalent, and approved by the Internal Revenue Service as exempt from federal taxes for a period of five (5) years prior to application." It is unclear what the term "application," as used in this section, refers to. No process of application is mentioned elsewhere in the measure. As a result, it is unclear which organizations will fall within Section II (and will thus be permitted to conduct the game of bingo).
 3. Section III of your proposed measure levies taxes on "the adjusted gross win" and requires the deposit of certain amounts into the "State General Revenue Fund." However, no provision is made concerning the procedure for collecting these taxes, or for the deposit of the proceeds. This deficiency is particularly pertinent, in light of Section VII, under which existing laws that may be inconsistent with the measure are declared not to apply. Moreover, certain key terms related to this taxation (such as "adjusted gross win") are not defined. Finally, the ambiguities of this section of the proposed measure are further complicated by the fact that part of the language of the section is stricken out and replaced with illegible handwriting.
 4. Section IV of your proposed measure, which authorizes a statewide lottery, requires the deposit of all revenues from the lottery, less "legitimate expenses" to be deposited into the "State General Revenue Fund." This section does not define key terms, such as "legitimate expenses," nor does it address the issue of the procedure for collecting or depositing these revenues.
 5. There are various ambiguities that appear in connection with the Gaming Commission that is authorized by Section V of your proposed measure. First, the composition of the Commission is unclear. In particular, it is unclear how many members the commission is to have, and whether one person could meet the requirement of "African descent, Spanish descent, and female gender." Second, it is unclear precisely what the authority of the Commission is to be. One vague issue is how the Commission's "enforcement" authority might affect the existing enforcement authority with regard to taxes. It is also unclear how the Commission's authority is to work in conjunction with the authority expressly reserved to the Racing Commission under Section IX. Moreover, because the proposed measure is declared in Section VIII to go into effect as of the date of its approval, it is unclear who would exercise enforcement authority between the date of approval and such time as the Commission is established and appointed pursuant to Section V. As mentioned previously, another vague issue is the authority of the General Assembly vis-à-vis the Commission. Although the General Assembly is authorized to appoint the Commission, it is unclear whether the General Assembly would have any continuing authority over the Commission or over the regulation of gaming generally, including the power to clarify some of the terminology and other issues that may not be fully addressed in the proposed measure.
 6. The severability clause of Section VI is unclear. In particular, the Section provides that if a provision is held invalid as applied to particular persons or circumstances, it is not to be deemed invalid as to other persons or circumstances, yet is deemed severable. It is unclear how such a severability scheme would operate.
The foregoing list of ambiguities is not intended to be exhaustive, and once again I urge you to consult your counsel in restructuring your proposed measure. My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh