Mr. Stephen Copley, Sponsor Give Arkansas A Raise Now Post Office Box 2441 Little Rock, AR 72203-2441
Dear Mr. Copley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment:
Popular Name
The Arkansas Minimum Wage Amendment
Ballot Title
A PROPOSED AMENDMENT TO THE ARKANSAS CONSTITUTION RAISING THE STATE MINIMUM WAGE TO $6.15 AN HOUR BEGINNING JANUARY 1, 2007; RAISING THE MINIMUM WAGE EACH YEAR AFTER TO KEEP PACE WITH INCREASES IN THE COST OF LIVING; PERMITTING AN EMPLOYER TO PAY AN EMPLOYEE HALF THE MINIMUM WAGE IF THE EMPLOYER IS ABLE TO DEMONSTRATE THAT TIPS COMBINED WITH WAGES ARE EQUAL TO OR GREATER THAN THE MINIMUM WAGE FOR ALL HOURS WORKED; DEFINING "EMPLOYER" AS INCLUDING ANY INDIVIDUAL, PARTNERSHIP, ASSOCIATION, CORPORATION, BUSINESS TRUST, OR ENTITY, ANY PERSON OR GROUP OF PERSONS ACTING DIRECTLY OR INDIRECTLY IN THE INTEREST OF AN EMPLOYER IN RELATION TO AN EMPLOYEE, AND THE STATE AND ANY POLITICAL SUBDIVISIONS, BUT EXEMPTING ANY EMPLOYER FOR ANY WORKWEEK IN WHICH FEWER THAN FOUR (4) EMPLOYEES ARE EMPLOYED; ADOPTING THE DEFINITION OF "EMPLOYEE" UNDER SECTION 11-4-203(3) OF THE ARKANSAS CODE AS OF NOVEMBER 1, 2005 (WHICH EXCLUDES FROM COVERAGE EXECUTIVES, ADMINISTRATORS, PROFESSIONALS, OUTSIDE COMMISSION-PAID SALESPERSONS, STUDENTS PERFORMING SERVICES FOR THEIR SCHOOLS, EMPLOYEES OF THE UNITED STATES, CERTAIN EMPLOYEES OF THE STATE AND ANY POLITICAL SUBDIVISION THEREOF, VOLUNTEERS, INDEPENDENT CONTRACTORS, CERTAIN SMALL FARM EMPLOYEES AND OTHER SPECIFIED AGRICULTURAL EMPLOYEES, EMPLOYEES PRINCIPALLY ENGAGED IN THE RANGE PRODUCTION OF LIVESTOCK, EMPLOYEES OF SMALL FORESTRY OR LUMBERING OPERATIONS, SEASONAL CAMP EMPLOYEES, AND CERTAIN NONPROFIT CHILD WELFARE HOUSEPARENTS), BUT MODIFYING THIS DEFINITION OF EMPLOYEE FOR THIS AMENDMENT SO THAT IT NO LONGER EXCLUDES ANY INDIVIDUAL EMPLOYED BY THE STATE OR A POLITICAL SUBDIVISION THEREOF; REQUIRING THE DIRECTOR OF THE DEPARTMENT OF LABOR TO INTERPRET, IMPLEMENT AND ENFORCE THIS AMENDMENT; AUTHORIZING THE DIRECTOR TO ENTER AND INSPECT THE RECORDS AND PLACE OF BUSINESS OR EMPLOYMENT OF ANY EMPLOYER IN THE STATE IN ORDER TO ENFORCE THIS AMENDMENT; REQUIRING THE DIRECTOR TO ESTABLISH NECESSARY OR APPROPRIATE WORKPLACE POSTING AND RECORDKEEPING REQUIREMENTS AND CIVIL PENALTIES PAYABLE TO THE STATE FOR VIOLATIONS OF THE REQUIREMENTS AND STANDARDS PRESCRIBED BY THIS AMENDMENT; PERMITTING ANY PERSON OR ORGANIZATION TO FILE AN ADMINISTRATIVE COMPLAINT WITH THE DIRECTOR CHARGING THAT AN EMPLOYER HAS VIOLATED THIS AMENDMENT; REQUIRING THE DIRECTOR TO PROMPTLY INVESTIGATE SUCH COMPLAINTS; PERMITTING THE DIRECTOR TO REVIEW RECORDS REGARDING ALL EMPLOYEES AT THE EMPLOYER'S WORKSITE IN ORDER TO DETERMINE WHETHER A PATTERN OF VIOLATIONS HAS OCCURRED AND TO PROTECT THE IDENTITY OF ANY EMPLOYEE IDENTIFIED IN THE COMPLAINT; REQUIRING THE NAME OF ANY EMPLOYEE IDENTIFIED IN A COMPLAINT TO BE KEPT CONFIDENTIAL AS LONG AS POSSIBLE AND PERMITTING THE NAME TO BE DISLCOSED ONLY WITH THE EMPLOYEE'S CONSENT; PROHIBITING RETALIATION AGAINST ANY PERSON FOR ASSERTING ANY CLAIM OR RIGHT UNDER THIS AMENDMENT, FOR ASSISTING ANY OTHER PERSON IN DOING SO, OR FOR INFORMING ANY PERSON ABOUT THEIR RIGHTS; PROVIDING THAT AN EMPLOYEE OR THE ATTORNEY GENERAL MAY ALSO BRING AN ACTION FOR EQUITABLE AND MONETARY RELIEF AGAINST AN EMPLOYER IN ANY COURT OF COMPETENT JURISDICTION FOR ANY VIOLATION OF THIS AMENDMENT OR ANY LAW OR REGULATION IMPLEMENTING IT; PROVIDING THAT SUCH AN ACTION MUST BE BROUGHT WITHIN THREE YEARS OF THE VIOLATION OR OF WHEN THE VIOLATION CEASED IF IT WAS OF A CONTINUING NATURE, OR WITHIN ONE YEAR AFTER FINAL DISPOSITION BY THE DIRECTOR OF A COMPLAINT FOR THE SAME VIOLATION, WHICHEVER IS LATER; PROVIDING THAT THERE SHALL BE NO EXHAUSTION REQUIREMENT, AND NO PROCEDURAL, PLEADING, OR BURDEN OF PROOF REQUIREMENTS BEYOND THOSE THAT APPLY GENERALLY TO CIVIL SUITS IN ORDER TO MAINTAIN SUCH AN ACTION; PROVIDING THAT WHERE AN EMPLOYER IS FOUND BY THE DIRECTOR OR A COURT TO HAVE VIOLATED ANY PROVISION OF THIS AMENDMENT, THE EMPLOYER SHALL PAY ANY APPLICABLE CIVIL PENALTIES AND PAY THE EMPLOYEE BACK WAGES, AN ADDITIONAL EQUAL AMOUNT AS LIQUIDATED DAMAGES, AND THE EMPLOYEE'S COSTS AND REASONABLE ATTORNEY'S FEES; PROVIDING THAT IN THE CASE OF RETALIATION, THE DIRECTOR OR A COURT SHALL SET DAMAGES AT AN AMOUNT SUFFICIENT TO COMPENSATE THE EMPLOYEE AND DETER FUTURE VIOLATIONS, BUT NOT LESS THAN ONE HUNDRED FIFTY DOLLARS FOR EACH DAY THAT THE VIOLATION CONTINUED; PROVIDING THAT THIS AMENDMENT SHALL BE LIBERALLY CONSTRUED IN FAVOR OF ITS PURPOSES AND SHALL NOT LIMIT ANY LAW OR POLICY THAT REQUIRES PAYMENT OF HIGHER OR SUPPLEMENTAL WAGES OR BENEFITS; PERMITTING THE GENERAL ASSEMBLY TO PASS LAWS TO IMPLEMENT THE AMENDMENT, BUT PREVENTING THE GENERAL ASSEMBLY FROM IN ANY MANNER RESTRICTING ANY OF ITS PROVISIONS; AND PROVIDING THAT THE PROVISIONS OF THIS AMENDMENT ARE SEVERABLE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466,677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant,259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall, 229 Ark. 411,316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219,223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241,884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. Although your proposed measure is largely clear and understandable, I cannot fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of several ambiguities occurring therein.
I refer to the following ambiguities:
The first paragraph of your proposed amendment states that: "[e]very employer shall pay its employees a wage of not less than six dollars and fifteen cents per hour beginning January 1, 2007. The minimum wage shall be increased on January 1 of successive years by the increase in the cost of living. The increase in the costs of living shall be measured by the percentage increase as of August of the immediately preceding year over the level as of August of the previous year of the Consumer Price Index (All Urban consumers, U.S. City Average for All Items) or its successor index as published by the U.S. Department of Labor or its successor agency, with the amount of the minimum wage increase rounded to the nearest five cents." (Emphasis added). In my judgment, an ambiguity arises from the emphasized language in that it assumes an increase every year in the CPI. This assumption is repeated in the language of your ballot title ". . . raising the state minimum wage to $6.15 an hour beginning January 1, 2007; raising the minimum wage each year after to keep pace with increases in the cost of living. . . ." (Emphasis added). Although a perpetually positive CPI is a reasonably safe assumption, I must note that a negative CPI is possible. See e.g., Greg Kaza, The Arkansas Policy Foundation "Rolling Deflation" (Producer Prices), stating that: ("The CPI, on a seasonally adjusted basis, was last negative in 1954 (St. Louis Federal Reserve) or 1955 (Minneapolis Fed" and that "[n]egative CPI is rare in the postwar era"). Available at www.reformarkansas.org, last visited on December 16, 2005. See also www.bls.gov ("Consumer Price Index" and "Table Containing History of CPI-U US, All Items Indexes and Percent Changes From 1913 to Present"). Your amendment does not contemplate this occurrence, however. In the event of the rare occurrence of a flat or negative CPI over one of the August-to-August time periods set in your amendment, the current text of your proposed amendment may be misleading in suggesting that the minimum wage "shall be increased" for that year. The ambiguity is apparent in the event of a negative CPI for the relevant period. Would the minimum wage decrease in such event? I think the intent of your proposal is clearly not to have a decrease, but the uncertainty may give the voters "serious ground for reflection." I am therefore unable to certify a summarization of this portion of your amendment fairly to the voters without clarification of this ambiguity.
The last full paragraph of your proposed amendment provides that "[t]he general assembly may pass laws to implement the amendment, including laws to strengthen its remedies, increase the minimum wage, or extend its coverage, but in no manner restricting any of its provisions." (Emphasis added). An ambiguity arises, in my judgment, as to how the General Assembly's authority to increase the minimum wage interacts with the automatic annual CPI increases established in your proposed amendment. For example, assuming the General Assembly exercises its authority to "increase the minimum wage" either in the intervening period between CPI increases or effective on January 1 of a particular year, questions may arise as to the proper computation of the minimum wage in Arkansas. In either event, a question may arise as to whether a succeeding January CPI increase is to be applied to the minimum wage as set by the General Assembly, or as set by the last CPI increase. In addition, increases in the minimum wage by the General Assembly appear to contravene the mandatory portion of your proposed amendment imposing an annual increase "by the increase in the cost of living." I am thus unable to adequately summarize your proposal without clarification of this ambiguity.
The third full paragraph of your amendment defines the word "employer" for purposes of the amendment and states that the "amendment shall include any individual employed by the state. . . ." The fourth paragraph of your proposed amendment gives the Director of the Department of Labor power to "establish appropriate civil penalties payable to the state for violations" and to "institute[e] legal actions to enforce" administrative findings of violations. The sixth paragraph gives an employee a right to bring an action for monetary relief against "an employer in any court of competent jurisdiction. . . ." An ambiguity arises under these provisions as to whether the sovereign immunity of the State is superseded or waived in the context of these enforcement actions. Article 5, § 20 provides that: "[t]he State of Arkansas shall never be made a defendant in any of her courts." It may be your intention to supersede Article 5, § 20 in this context and to allow actions for monetary penalties and damages against the State of Arkansas. The language of your proposed amendment is not entirely clear in this regard, however, and as a consequence I am unable to summarize your proposal without clarification of the ambiguity.
The third paragraph of your amendment defines "employee" as that word is defined at A.C.A. § 11-4-203(3) as of November 1, 2005. The text of your proposed amendment then parenthetically summarizes the provisions of that statute as excluding "executives, administrators, [and] professionals . . ." from the definition. This characterization is repeated in your proposed ballot title, describing the statute as excluding "executives, administrators, [and] professionals." This characterization is not entirely correct in my judgment, thus leading to the potential for confusion on the issue. The statute in question, A.C.A. § 11-4-203(3)(A) (Supp. 2005, excludes from its operation in this regard "[a]ny individual employed in a bona fide executive, administrative, or professional capacity. . . ." (Emphasis added). Although the difference may seem a small one, the disconnect between the language of the statute and the language used in your measure to describe it may lead to confusion as to the employees to be affected by your measure. I am thus currently unable to certify a ballot title summarizing this language.
The fourth and fifth paragraphs of your proposed amendment give the Director of the Department of Labor the authority to "enter and inspect the records and place of business or employment of any employer in the state in order to enforce this amendment" and to "review records regarding all employees at the employer's worksite . . ." respectively. Similar power is granted under current law at A.C.A. § 11-4-209(d) (Repl. 2002). Although the language of these authorizations is not ambiguous, in my judgment uncertainty may arise as to whether they purport to authorize administrative action or searches and seizures without a warrant or other form of judicial process for purposes of Fourth Amendment analysis. Compare on this point, Marshall v. Barlow's Inc., 436 U.S. 307 (1978) (requiring a warrant before OSHA officials could enter business premises over employer's objection), with Donovan v. Lone Steer, Inc., 464 U.S. 408 (1984) (upholding the execution of a U.S. Department of Labor administrative subpoena where no non-consensual entry of nonpublic areas was had and the employer had the right, in an action in federal district court, to question the reasonableness of a subpoena before suffering any penalties for refusing to comply with it). The uncertainty of your measure on this point might arguably be resolved through the General Assembly's power to "implement the amendment," but the limitation against the General Assembly "restricting any of [the amendment's] provisions" might preclude the passage of a statutory scheme providing for some type of judicial review in connection with the inspection right. I am thus unable to certify a ballot title for your proposed measure in light of the potential uncertainty on this issue.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh