Mr. Donnie Kissinger 1823 Rosemond Avenue Jonesboro, AR 72401 Dear Mr. Kissinger:
I am writing in response to your request for certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You previously submitted a ballot title and popular name for a similar measure, which I rejected due to ambiguities in the text of the measure. See Ark. Op. Att'y Gen. No. 2006-054. You have made revisions in the text of your measure and now resubmit your proposed popular name and ballot title as follows:
Popular Name
 AMENDMENT TO THE STATE OF ARKANSAS CONSTITUTION TO REPEAL ARTICLE 19, SECTION 4 AND ESTABLISH A STATE LOTTERY FOR ARKANSAS AND A STATE LOTTERY COMMISSION TO OVERSEE ITS IMPLEMENTATION
Ballot Title
 AMENDMENT TO REPEAL ARTICLE 19, SECTION 4 AND WILL AUTHORIZE A STATE LOTTERY WITH THE NET PROCEEDS OF THE LOTTERY'S REVENUES TO PROVIDE ASSISTANCE TO THE ARKANSAS EDUCATION SYSTEM. THIS WILL NOT INTERFERE WITH ANY OTHER FUNDING PROGRAMS WHETHER FEDERALLY FUNDED OR GRANTS OR OTHER MONEYS THAT ARE ALREADY IN PLACE. THIS DOES NOT AUTHORIZE GAMES OF CHANCE ASSOCIATED WITH CASINOS, INCLUDING, BUT NOT LIMITED TO, SLOT MACHINES, ROULETTE WHEELS AND OTHER SIMILAR GAMBLING DEVICES. IT ALSO ESTABLISHES A STATE LOTTERY COMMISSION AND TIME FRAME TO IMPLEMENT THE STATE LOTTERY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466,677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417,316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219, 223, 226,604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938
(1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to remaining ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Your proposed amendment establishes "a state lottery" and it also refers to "the rules of said state lottery." (Emphasis added). This seems to suggest that there is to be one state lottery. However, "[a] state lottery" under the amendment means "the sale of tickets or chances in the state [sic] of Arkansas for the opportunity to win money." This broad definition might be interpreted to mean that the amendment establishes multiple lotteries, or perhaps multiple lottery games in light of the amendment's approval of the State's participation in "multistate lottery games."[1] This must be clarified so that the voter is fully informed regarding the "state lottery" that will be established upon passage of the amendment.
 2. Unlike your previous submission, this proposed measure makes no mention of the Legislature's authority to pass such general law as it deems appropriate to implement and administer the lottery that will be established upon adoption of the amendment. Yet many aspects of the amendment, if adopted, would appear to require implementation and administration. For instance, while it seems clear that the Legislature is to determine the specific "educational needs" that are to be funded by lottery revenues, it is unclear how the exact percentages are to be established for distributing ticket proceeds. This uncertainty regarding implementation and administration prevents me from summarizing this aspect of your proposed amendment for the voter.
 3. Several additional ambiguities surround the matter of implementation and administration. The proposed measure states that net lottery revenues "are allocated . . . and appropriated to" certain education purposes. This is ambiguous. Read literally, this seems to say that funds are "appropriated" by the amendment itself. But only the legislature can" appropriate" funds. See Ark. Const. art. 5, §§ 29-31 and art. 16, § 12. I am therefore uncertain whether the term "appropriated" is used in the legal sense in your amendment, so as to involve action by the legislature in this regard.
 4. An ambiguity also arises in connection with the creation of the State Lottery Commission. The measure provides that "there shall be created a `State Lottery Commission.'" The words "shall be" suggest that some further action might be necessary to create the Commission. But if that is the case, the process is unclear. Or it might be that the amendment itself creates the Commission.
 5. A related ambiguity involves the requirement that members" shall have four-year terms as provided by law." (Emphasis added). This obviously contemplates implementing legislation, but the precise purpose of such legislation is unclear. If the legislature must enact legislation with respect to either the creation of the Commission or the members' terms, this must be clarified so that the voters are fully informed regarding necessary action in connection with the amendment's implementation.
 5. The role of the "State Lottery Commission" is also unclear. The Commission is charged with establishing "the rules of said state lottery." But the scope of these rules, and the precise authority of the Commission, is not clearly outlined. This, coupled with the uncertainty noted above regarding the Legislature's role, raises an ambiguity that must be clarified for the voters. The voters will likely have "serious ground for reflection" concerning the amendment's implementation and administration, and the respective powers and duties of the Legislature and the Commission must therefore be clearly outlined in the amendment.
 6. I also find an ambiguity with respect to the "[t]eacher and administrative pay" which is included among the educational purposes for which the lottery's net proceeds are to be allocated and appropriated. Specifically, the term" administrative pay" is ambiguous. If this is intended to mean pay of administrators, clarification is necessary.
 5. The "date of implementation" remains ambiguous, in my view. As I noted in my previous opinion, there is language in your measure suggesting that state funds may be used to finance the lottery up until six months before the" date of implementation." This date is therefore significant. Yet it is unclear precisely what "date" this refers to. The only other reference to implementation is found in the following passage with regard to "rules":
 The Commission shall establish the rules of said state lottery. This should be implemented three months from date of commission being selected.
 While this language is not entirely clear, it seems to mean that the rules must be effective within three months of the members' appointment and qualification. I am uncertain, however, whether this is also the "implementation" date for purposes of the state funding limitation.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
[1] Please note that there is a grammatical error in the text of the amendment with respect to such lottery games. It provides that the State "can precipitate in multistate lotteries. . . ." (Emphasis added). I assume that the intended word is "participate.