Mr. Harold G. Martin 209 Trivista Left Hot Springs, AR 71901
Dear Mr. Martin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment. Similar measures have been previously submitted on your behalf, some of which this office rejected due to ambiguities in the text of the proposed amendments. See Ops. Att'y Gen. 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-227 and 2002-208. On March 6, 2003, this office revised and certified the popular name and ballot title for a similar measure, as evidenced by Op. Att'y Gen. 2003-054. You have since made changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES, AUTHORIZING HAROLD GLEN MARTIN AND MARCIE ANN MARTIN OR THEIR TRANSFEREES TO OPERATE GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR SUBDIVISION OR AGENCY THEREOF; EMPOWERING THE GENERAL ASSEMBLY TO OPERATE A LOTTERY OR LOTTERIES WITH THE STATE WIDE SALE OF LOTTERY TICKETS TO BE OPERATED BY THE STATE TO INCLUDE THE OPERATION OF A LOTTERY OR LOTTERIES TO BE OPERATED WITHIN THE STATE BY THE STATE OF ARKANSAS IN COOPERATION WITH THE LOTTERIES AND LOTTERY DRAWINGS OPERATED BY OTHER STATES AND COMBINATION OF OTHER STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CARROLL, CRAWFORD, CRITTENDEN, GARLAND, MILLER AND PULASKI WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES; AUTHORIZING MARCIE ANN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CRITTENDEN, BENTON, GARLAND, MILLER, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES; AUTHORIZING THE GAMBLING OPERATOR, THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR THE PURPOSE OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR TO PAY 8% OF THE PROFIT FROM GAMBLING TO THE STATE'S GENERAL FUND FROM EACH GAMBLING LOCATION, 8% OF THE PROFIT TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS LOCATED AND 8% TO THE CITY'S GENERAL FUND IN WHICH GAMBLING IS LOCATED; REQUIRING THE GAMBLING OPERATOR UNLESS PROVIDED DIFFERENTLY ABIDE BY THE LAWS, RULES AND REGULATIONS OF THE STATE EFFECTING GAMBLING AND THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING" GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF WHICH THE GENERAL ASSEMBLY SHALL REGULATE, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS HAROLD GLEN MARTIN AND MARCIE ANN MARTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING TAXES, FEES AND OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT UNLESS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1 of your proposed amendment provides that: "Authorizing any non-profit organization incorporated in the state to operate bingo and raffles without license, fee or permit." In addition to the fact that this is an incomplete sentence, owing to the lack of any verb contained therein, an ambiguity is created by this clause when viewed in relation to Section 7 of your proposed amendment. The latter section provides that: "Unless provided for differently within the provisions of this amendment the General Assembly shall be empowered to regulate, tax and license the operation of bingo and raffles, gambling and lotteries." The extent of the General Assembly's authority to "regulate, tax and license" bingo and raffles is unclear in light of the contradictory language of Sections 1 and 7 in this regard.
 2. Section 2 of your proposed amendment provides that: "The General Assembly shall be empowered to operate a lottery or lotteries with the state wide sale of lottery tickets to be administered and operated by the State to include the operation of a lottery or lotteries in cooperation with the lotteries operated by other states and in cooperation with the lotteries operated in combination by other states which significantly changes current laws under Arkansas Constitution Article 19 Section 14 effecting [sic] gambling." A number of ambiguities arise from this language. An initial ambiguity arises as to how the General Assembly, a part-time citizen legislature, will" operate" a lottery or lotteries. An additional ambiguity arises from the subsequent language stating that the state wide sale of lottery tickets is to be "administered and operated" by the "State." These two clauses are contradictory. Will the General Assembly "operate" both the lottery and the state wide sale of lottery tickets, or may the General Assembly delegate either or both of these responsibilities to another "State" entity? An additional ambiguity arises from the language "to include the operation of a lottery or lotteries in cooperation with the lotteries operated by other states and in cooperation with the lotteries operated in combination by other states. . . ." In addition to being confusingly wordy, the use of the words "to include" create an ambiguity as to whether the General Assembly must, if it creates a lottery, include the operation of a lottery in cooperation with other states or the combined lotteries of other states. The use of such arguably mandatory language potentially conflicts with the earlier part of the sentence "empowering" the General Assembly to operate a lottery. Finally, the last clause of this sentence notes that it "significantly changes current laws under Arkansas Constitution Article 19 Section 14 effecting [sic] gambling." As noted in Op. Att'y. Gen. 2003-204, with reference to a similar provision, "[t]his language is confusing because Article 19, § 14 of the Arkansas Constitution prohibits" lotteries" not "gambling," terms with divergent definitions under your proposed amendment. Your measure repeals "[a]ll laws and Constitutional provisions which conflict with this amendment. . . ." Presumably, therefore, your amendment will impliedly repeal Article 19, § 14. To state that Article 19, § 14 will be "significantly change[d]" is therefore confusing. I appreciate that your intention may be to alert voters of the change being made to current law. That type of intention, however, is one normally expressed in the ballot title for such a measure, not in the substantive text of the amendment." Id.
at 5.
 3. Subsections 1 and 2 of Section 3 of your proposed amendment are similar, each providing similar authority to you and Marcie Ann Martin to operate gambling, but with different authority as to the counties in which each may operate. Each subsection authorizes the named person to "operate gambling, employ persons to operate gambling and subcontract any independent contractor(s) to operate gambling on any day for the whole of a twenty-four (24) hour day only within the interior area of not more than one structure within each of the [specified counties] with such structure located within those counties or within any city and town within those counties without license, fee or permit." An ambiguity arises as to whether the final language "without license fee or permit" applies only to the affected county, city or town, or whether this language also insulates the gambling operation from the requirement of a "license, fee or permit" from the state. If so, this language conflicts with Section 7 of your proposed amendment. I cannot determine your intention in this regard from the language used.
 4. A similar ambiguity arises from subsection 4 of Section 3 of your proposed amendment, which authorizes the gambling operator to sell and serve alcoholic beverages, including the "sale and complimentary service of alcoholic beverages within those counties, cities and towns where the sale of alcoholic beverages are otherwise prohibited without licensee, [sic] fee or permit." I am uncertain as to the meaning of this last clause "without licensee, [sic] fee or permit" because it is unclear which preceding clause it is intended to modify. If you intend that alcoholic beverages may by sold or provided free without any type of state or local regulation, this fact may give the voters serious ground for reflection. I cannot determine your intention in this regard, however, from the language used.
 5. Section 4 of your proposed amendment provides that: "All shipments of gambling devices into the State within which the registered, recording and labeling of which has been duly performed by the manufacturer or dealer thereof in accordance with. . . . 15 U.S.C. Sections 1171-1178, shall be deemed legal shipments." This sentence, particularly the words "within which" is confusing and gives rise to an ambiguity.
 6. Section 5(1)(g) of your proposed amendment defines "gambling operator" as "Harold Glen Martin and Marcie Ann Martin, or any other person, company or corporation to whom a gambling operation with the sale and complimentary service of alcoholic beverages is transferred." An ambiguity arises from the use of the word "and" between Harold Glen Martin and Marcie Ann Martin. This language implies that both named persons will be the "operator" of each gambling operation and must operate each location jointly. This is particularly ambiguous in light of the differing authority of each named person to operate gambling in specified counties in Section 3(1) and (2) of your amendment.
 7. Section 5(1)(h) of your proposed amendment defines "profit" as "the amount of money after deducting any, and all, federal, state and local taxes and all, [sic] other costs or fees by the federal, state, and local governments, or any agencies thereof, and all operational costs to operate and facilitate the operation of gambling to include, but not limited to, subcontracting any independent contractor(s) to operate gambling, the costs of contracts for work, contracts or services, employee payroll and benefits, utilities, lease of property, purchase of property, construction and maintenance costs of any structure used for the purpose of gambling, interest on loans, advertising and promotion, attorney and accounting fees, complimentary alcoholic beverages and donations to any non-profit organization registered or incorporated in any state from the gross earnings which is the total amount of money earned from gambling after the deduction of money paid as a loss to those persons as winners." An initial ambiguity arises from the reference in this definition to "costs and fees by the federal, state, and local governments." It is unclear exactly what these costs and fees might be, when Section 3(1), (2) and (3) of your proposed amendment each make reference, albeit in ambiguous language, to the operations being without" license, fee or permit." An additional ambiguity arises as to who is in charge of calculating or auditing "profit" as defined in your amendment. No provision is made in this regard and a question arises as to whether the General Assembly, might, under Section 7 of your amendment, adopt laws in this regard. A further ambiguity arises from the exclusion of "donations to any non-profit organization" from the definition of "profit." This language on its face would allow the gambling operator to effectively donate any sums realized from the gambling operations to nonprofit organizations and thereby avoid the payment of any taxes to the state, county or affected city or town under Section 3(4), (5), and (6) of your amendment. A similar argument might be made with relation to "employer payroll and benefits." If this is indeed authorized by your amendment it must be made clear to the voters.
 8. Section 6 of your proposed amendment is entitled "AMENDMENT SELF-EXECUTING," and provides that: "The provisions of this amendment shall take effect immediately upon passage of this amendment unless otherwise provided. The General Assembly shall be required to make any and all other laws, rules and regulations to the enforcement of this Constitutional Amendment." As stated in Op. Att'y Gen. 2002-293, with regard to similar language: "The title of Section 8 indicates that the measure is to be self-executing, but the text further empowers various authorities to" make any and all other laws and regulations to the enforcement" of the measure. This authorization raises substantial questions concerning the enforcement of the measure and concerning who is to have ultimate enforcement authority in the various jurisdictions." Id. at 7. Additionally, the General Assembly itself does not ordinarily adopt" rules and regulations" (see Arkansas Constitution, art. 5, § 21, "[n]o law shall be passed except by bill. . . ."). The General Assembly ordinarily delegates the authority to make such rules and regulations to executive agencies. If your proposed amendment authorizes a change in this regard, that fact must be clear in your amendment before it may be summarized for the voters.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:cyh