Mr. Harold G. Martin 209 Trivista Left Hot Springs, AR 71901
Dear Mr. Martin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment. Similar measures have been previously submitted on your behalf, some of which this office rejected due to ambiguities in the text of the proposed amendments. See Ops. Att'y Gen. 2004-038, 2004-004, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-227 and 2002-208. On March 6, 2003, this office revised and certified the popular name and ballot title for a similar measure, as evidenced by Op. Att'y Gen. 2003-054. You have since made changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES AND AUTHORIZING HAROLD GLEN MARTIN OR HIS TRANSFEREES TO OPERATE GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; AUTHORIZING THE GENERAL ASSEMBLY WITH THE DISCRETION TO FACILITATE THE OPERATION OF A LOTTERY OR LOTTERIES WITH THE STATE WIDE SALE OF LOTTERY TICKETS TO BE OPERATED BY THE STATE, OR AN AGENCY OF THE STATE THEREOF, WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CAROLL [SIC], CHICOT, CRAWFORD, CRITTENDEN, BENTON, GARLAND, JEFFERSON, MILLER, MISSISSIPPI, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES; AUTHORIZING HAROLD GLEN MARTIN, THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR THE PURPOSE OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR PAY 8% OF THE PROFIT FROM GAMBLING TO THE STATE FROM EACH GAMBLING LOCATION, 8% OF THE PROFIT TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS LOCATED AND 8% TO THE CITY GENERAL FUND IN WHICH GAMBLING IS LOCATED; PROHIBITING THE GENERAL ASSEMBLY FROM REGULATING, RESTRICTING OR PROHIBITING THE OPERATION OF BINGO, RAFFLES AND GAMBLING IN ANY MANNER; UNLESS PROVIDED FOR DIFFERENTLY THERE SHALL BE NO LICENSE, FEE, PERMIT OR TAX OF ANY KIND BY ANY NAME BY THE STATE, AND ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON THE OPERATION OR REVENUES DERIVED FROM BINGO, RAFFLES AND GAMBLING; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING" LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING" STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "PROFIT" AS THE AMOUNT OF MONEY PAID TO THE GAMBLING OPERATOR AFTER DEDUCTING ANY, AND ALL, OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS FOR THE ENFORCEMENT OF THE AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. In light of my previous Opinion 2004-038 on this point, you have changed the language of Section 2 of your amendment, which formerly began with the language" Authorizing the General Assembly with the discretion to administer the operation of a lottery. . . ." (Emphasis supplied). You have changed the word "administer" in this sentence, so that the language now reads "Authorizing the General Assembly with the discretion to facilitate the operation of a lottery or lotteries. . . ." (Emphasis supplied). Although I objected in Opinion 2004-038 to the use of the word "administer," which implied that the part-time citizen legislature itself would be responsible for operating the lottery, the use of the word "facilitate" also leads to confusion. As I stated in Opinion 2003-204, in response to the use of similar language, "the use of the words `facilitate' and `facilitating' are confusing. The word `facilitate' means `to make easier.' Webster's Seventh New Collegiate Dictionary, (1972) at 298. Section 1(2) of [the] proposed amendment [in Op. 2003-204] therefore authorizes the General Assembly to `make easier' a lottery or lotteries. The exact authority of the General Assembly is therefore uncertain. Does this language invest the General Assembly with the power to create a state-run lottery or does it also invest the General Assembly with the discretion to `make easier' the operation of a state lottery by some other non-state entity? This issue will give the voters serious ground for reflection."
 2. An ambiguity exists as to the extent of the General Assembly's power to regulate bingo, raffles and gambling under your proposal. Your previous submission appeared to restrict the General Assembly from any such authority (and in fact from authority to regulate even conduct falling outside that authorized in your amendment). You have altered some pertinent provisions of your proposal on this point, however, and new ambiguities have been created thereby. Specifically, whereas your previous Section 3(7) prohibited the General Assembly from regulating
bingo, raffles and gambling, you have now removed the word "regulating" and the provision now provides that the "General Assembly shall be prohibited from restricting or prohibiting in any manner the operation of bingo and raffles by non-profit organizations, as provided in Section 1 of this amendment, and from restricting or prohibiting in any manner the operation of gambling, as provided in 1 of this Section." (Emphasis supplied). This language creates an ambiguity when read in conjunction with two other provisions of your proposal, one contained in your previous submission (Section 3(6)), and one you have now inserted into your present submission (Section 8). The first of these provisions (Section 3(6)), states that: "Unless provided for differently within the provisions of this amendment there shall be no tax of any kind nor license fee or permit of any kind by any name placed on the operation or revenues derived of bingo and raffles, as provided in section 1 of this amendment, the operation of gambling, as provided in (1) of this Section, nor on the sale and service of alcoholic beverages, as provided in (2) of this Section. (Emphasis supplied). This provision suggests that the General Assembly will not have authority to issue permits of any kind or name on the operation of bingo, raffles, or gambling. Newly added language to Section 8 of your amendment, however, requires the General Assembly to "make any and all other laws to the enforcement of this Constitutional Amendment." In addition to the fact that this new language of Section 8 conflicts with the title of Section 8 ("AMENDMENT SELF-EXECUTING), it creates an ambiguity in the exact regulatory power of the General Assembly over bingo, raffles, gambling and the selling and service of alcoholic beverages. The extent of the General Assembly's power to regulate the activities proposed in your amendment is a core concept that will give the voters serious ground for reflection. It must be made clear prior to summarization of your amendment in a ballot title for the voters.
 3. You have revised the definition of "profit" contained in Section 7(h), but have not addressed the ambiguity I described on this point in Opinion 2004-038, namely the extent of the authority of the General Assembly over the calculation and auditing of "profit." I assume from your lack of action on this point that it is your intention, as I posited in Opinion 2004-038 to" vest unbridled discretion in the gambling operator to define, calculate and audit its own profits, which profits will then be used as a basis for calculating the 8% paid to the various governmental entities. . . ." This fact is not entirely clear now, however, in light of the changes you have made with reference to the power of the General Assembly discussed above.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General