Mr. Harold Glen Martin 209 Trivista Left Hot Springs, AR 71901
Dear Mr. Martin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES AND AUTHORIZING HAROLD GLEN MARTIN TO OPERATE GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; AUTHORIZING THE GENERAL ASSEMBLY WITH THE DISCRETION TO CREATE, TAX, LICENSE AND REGULATE A LOTTERY OR LOTTERIES WITH THE STATE-WIDE SALE OF LOTTERY TICKETS TO BE OPERATED BY THE STATE, OR AN AGENCY OF THE STATE THEREOF, WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE GAMBLING, EMPLOY PERSONS TO OPERATE GAMBLING AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A 24 DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CAROLL [SIC], CHICOT, CRAWFORD, CRITTENDEN, BENTON, GARLAND, JEFFERSON, MILLER, MISSISSIPPI, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY OR TOWN WITHIN THOSE COUNTIES; AUTHORIZING HAROLD GLEN MARTIN, THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING TO SELL AND SERVE ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOEL [SIC] OF A 24 DAY ONLY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVEREAGES [SIC] IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR ANNUALLY PAY 8% OF THE PROFIT EARNED FROM EACH GAMBLING OPERATION WITHIN THE STATE TO THE STATE'S GENERAL FUND, 8% OF THE PROFIT EARNED ANNUALLY TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED AND 8% OF THE PROFIT EARNED ANNUALLY TO THE CITY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED; AUTHORIZING THE GAMBLING OPERATOR TO DEDUCT ANY, AND ALL, OPERATIONAL EXPENSES TO OPERATE GAMBLING FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED FROM GAMBLING AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE AS WINNERS TO DETERMINE THE AMOUNT OF PROFIT; AUTHORIZING THE STATE, OR AN AGENCY OF THE STATE THEREOF, TO AUDIT, CALCULATE AND DETERMINE WHICH DEDUCTIONS ARE OPERATIONAL COSTS NECESSARY TO THE OPERATION OF GAMBLING; PROHIBITING THE STATE, OR ANY AGENCY OF THE STATE THEREOF, UNLESS PROVIDED FOR DIFFERENTY [SIC] WITHIN THIS AMENDMENT FROM TAXING THE OPERATION OF BINGO, RAFFLES AND GAMBLING; PROHIBITING THE STATE, OR ANY AGENCY OF THE STATE THEREOF, UNLESS PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT FROM REQUIRING A LICENSE, FEE OR PERMIT OF ANY KIND BY ANY NAME TO OPERATE BINGO, RAFFLES AND GAMBLING; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION WITH OR WITHOUT SALE FROM APPROVAL BY THE STATE, OR ANY AGENCY OF THE STATE THEREOF; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING" BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN MONEY OR A PRIZE; DEFINING "RAFFLES" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDES MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLES [SIC] THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS WITH A CONTEST OR GAME OF CHANCE, SKILL OR ANY COMBINATION THEREOF WITH ONE AS WINNER THE OTHER(S) AS LOSER BUT EXCLUDES THE OPERATION OF BINGO, RAFFLES AND LOTTERIES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY SIZE AND KIND OF ATTACHED ADDITION CONSIDERED ONE STRUCTURE; DEFINING" GAMBLING OPERATOR" AS HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR COPRPORATIONS [SIC] TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDNET [SIC] CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "PROFIT" AS THE AMOUNT OF MONEY PAID TO THE GAMBLING OPERATOR AFTER DEDUCTING ANY, AND ALL, OPERTAIONAL [SIC] EXPENSES FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED FROM GAMBLING AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS TO THE ENFORCEMENT OF THIS AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. You have added new language in Section 1 (9) of your proposal, which now states that "[t]he State, or an agency of the State thereof, shall be authorized to to [sic] audit, calculate and determine which deductions are operational costs necessary to the operation of gambling for each gambling operation operated within the State." An ambiguity arises from this provision in light of the fact that you have prohibited the General Assembly in Section 1(12) of your amendment from regulating gambling. What state agency will conduct such an audit and who is to determine this fact if the General Assembly is prohibited from regulating gambling? Additionally, this section gives the as yet undetermined state agency the power to "audit, calculate and determine which deductions are operational costs necessary to the operation of gambling. . . ." If an unnamed state agency will be invested with this much power, to be exercised apparently without legislative direction or standards, this fact will give the voter serious ground for reflection.
 2. Section 1(12) also gives rise to another ambiguity. This subsection states that "[t]he General Assembly, and any agency of the State thereof, shall be prohibited from regulating, restricting, hindering and/or prohibiting in any manner the operation of bingo and raffles, as provided in (1) of this Section, the operation of gambling, as provided in (3) of this Section, and the sale of alcoholic beverages, as provided in (4) of this Section." The regulatory of political subdivisions under this language is unclear. Additionally, as noted above, this sweeping language seems contrary to the audit ability granted in Section 1(9).
 3. An ambiguity remains in Section (3) of your proposed measure. Although the title of this section is "Amendment Self Executing," nowhere in the text of the Section does the language carry out this title. The text merely makes the amendment effective immediately, unless otherwise provided, and states that the "General Assembly shall be required to make all other laws to the enforcement of this Constitutional Amendment." Is your amendment self-executing or not?
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh