Mr. Barry Lee Emigh 1104 7th Street Hot Springs, AR 71913
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed initiated act. Your popular name and ballot title are as follows:
 Popular Name AN ACT TO PROVIDE TAXATION AND FUNDING TO REPLACE PUBLIC TRANSIT AND SCHOOL BUSES WITH HYROGEN FUEL, THE HYDROGEN FUELING STATIONS AND FUEL PRODUCTION FACILITIES Ballot Title AN ACT TO REPLACE PUBLIC TRANSIT AND SCHOOL BUSES WITH HYDROGEN FUELED VEHICLES; TO PROVIDE HYDROGEN FUELING STATIONS AND FUEL PRODUCTION FACILITIES; TO PROVIDE FUNDING BY MEANS OF TAXATION; TO PROVIDE ELECTRIC UTILITY REGULATION AND COST CONTROL FOR THE PRODUCTION AND COST OF HYDROGEN AS A VEHICLE FUEL; TO PROVIDE THE GENERAL ASSEMBLY MAKES ALL OTHER RULES AND REGULATIONS TO THE INTENT OF THIS ACT; TO PROVIDE SEVERABILITY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act.See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463,466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1(1), of your proposed initiated act provides as follows:
 The General Assembly by a majority consent of both houses may increase, decrease, repeal and/or provide exemptions on such tax as specified herein which may be deemed appropriate and adequate to the full funding and intent of this act. Such funds shall be deposited and appropriated by the State and local governments as follows:
 (a) Immediately upon passage of this act there shall be a two (.02) cent sales tax on each gallon of gasoline and diesel fuel which shall be collected by the State and deposited in the state's general fund and appropriated by the General Assembly to be disbursed by the "Arkansas Transportation and Highway Department" to the cities with public transit and counties for distribution to the school districts for the purpose and intent of this act.
 (b) Immediately upon passage of this act there shall be a two (.02) cent sales tax on each gallon of gasoline and diesel fuel which shall be collected by any city operating a public transit system which shall be deposited in that city's general fund and appropriated by the city for the purpose and intent of this act.
 (c) Immediately upon passage of this act there shall be a two (.02) cent sales tax on each gallon of gasoline and diesel fuel which shall be collected by each county within a city with public transit which shall be deposited in that county's general fund and appropriated by the county and disbursed to the school districts for the purpose and intent of this act.
 (d) Immediately upon passage of this act there shall be a four (.04) cent sales tax on each gallon of gasoline and diesel fuel which shall be collected by each county within the whole of the county to exclude any city within that county with public transit which shall be deposited in that county's general fund and appropriated by the county and disbursed to the school districts for the purpose and intent of this act.
 Several ambiguities arise from this Section. Your measure refers to the tax as a "sales tax," and states that it is collected upon "each gallon of gasoline and diesel fuel." Although your measure states that "there shall be" a "sales tax," the exact transaction or event that triggers imposition of the tax is not indicated. I cannot determine exactly how the tax will be imposed. Compare A.C.A. § 26-52-301, a provision of the "Arkansas Gross Receipts Act of 1941" ("There is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following . . .," with A.C.A. § 26-55-205, a provision of the "Motor Fuel Tax Law" ("There is levied a privilege or excise tax of eight and one-half cents (8½¢) on each gallon of motor fuel as defined in this subchapter, sold or used in this state, or purchased for sale or use in this state . . ."). The former is levied on the gross proceeds or sale price. The latter is levied on a per gallon basis. I cannot determine the exact effect of your measure in this regard. In addition, your measure does not indicate whether this sales tax is levied at the retail level (as are existing "gross receipts taxes," see A.C.A. § 26-52-301, supra), or at the wholesale level (as are existing gasoline and diesel taxes, see A.C.A. §§ 26-55-205 and -230 and A.C.A. § 26-56-202). Finally, current Arkansas law exempts persons selling motor fuel from any "sales or gross receipts tax acts of the State of Arkansas." A.C.A. § 26-55-208. See also, A.C.A. § 26-52-401(11)(A) (Supp. 2005). In addition, current law prohibits cities and counties from levying and collecting any excise tax upon or measured by the sale, receipt, or distribution of motor fuel. A.C.A. § 26-55-209. If it is your intention to impliedly repeal these provisions through your initiated act, the extent and effect of your measure in that regard must be clear before it can be properly summarized and certified in a ballot title for the voters.
 2. The introductory language of Section 1 of your measure also leads to ambiguities. This provision gives the General Assembly the power, by majority consent of both houses, to increase, decrease, repeal or provide exemptions to" the tax as specified herein. . . ." As an initial matter, the introductory language of Section 1 of your measure is not clear as to whether it applies only to the state tax, or also the local taxes imposed by your measure. In addition, questions may arise as to whether the Arkansas Constitution would require a two-thirds vote, instead of a majority vote, for any change in the taxes levied by your measure. See Arkansas Constitution, art. 5, § 1 (Amendment 7) ("Amendment and Repeal") (stating that: No measure approved by a vote of the people shall be amended or repealed by the General Assembly . . . except upon a yea and nay vote on roll call of two-thirds of all the members elected to each house of the General Assembly. . . ." Another vote requirement issue may arise depending upon the exact nature of the tax imposed by your measure. Although state gross receipts taxes may generally be increased by a majority vote of the General Assembly under Arkansas Constitution, art. 5, § 38, a future increase in motor fuel taxes levied on gasoline and diesel fuel, absent a vote of the people, may require a ¾ vote of the General Assembly. The exact operation and nature of the tax levied by your measure is thus important in the vote requirement pertaining to its future amendment. Your measure may contravene constitutional requirements in this regard. I cannot determine this issue from the current language used, however.
 3. Several additional ambiguities arise from the language of Section 1 (a) through (d) of your measure. First, your measure requires collection of the listed taxes "immediately upon passage of this act. . . ." This provision may be unrealistic in requiring the State and local entities to "immediately" collect sales taxes on gasoline and diesel. Again, your measure is not exactly clear as to the method of imposition of the tax, but to the extent it requires the collection of a retail sales tax on gasoline or diesel, it may be misleading to provide that such collection will be "immediate." See, in this regard, "Legislative Drafting Manual for the State of Arkansas," § 6.8(b), available at www.arkleg.state.ar.us ("Research Resources") ("Bill Drafting Resources"). Second, your directive that the taxes collected in Section 1(a) be "deposited in the state's general fund" is ambiguous for the same reasons I detailed in Op. Att'y. Gen. 2006-009
(explaining that there is no existing fund with that exact name and citing A.C.A. §§ 19-5-202 to -311 (Repl. 1999 and Supp. 2005) (delineating state general revenue funds and fund accounts)). Finally, subsection (c) of your measure is unclear in requiring the collection of a tax by "each county within a city with public transit." I cannot determine the meaning of this language.
 4. Section 1 (2) of your measure states that: "Such money shall be appropriated and disbursed for the purpose of replacing public transit and public school buses as they age, and are retired, with hydrogen fueled vehicles of any type as the General Assembly shall specify and/or to retro fit such vehicles as may be deemed appropriate, to include, but not limited to the appropriation and disbursement of funds for the purchase of hydrogen fueling facilities, hydrogen production facilities, specialized tools, equipment and training which may be necessary." Your measure does not define the terms "public transit" and "public school buses" and an ambiguity therefore arises as to exactly which vehicles would be included in these terms. Questions may arise, for example, as to whether the term "public transit" applies only to publicly-owned vehicles or whether vehicles that are privately owned, but used to transport members of the public are also included.
 5. Section 1 (3) of your measure provides that: "The General Assembly may further expand the appropriation of such funds disbursed by the [`]Arkansas Transportation and Highway Department,' and the local governments and school districts to include all vehicles, of any kind, for any purpose as they age, and are replaced, over to hydrogen fuel to include retro fitting such vehicles over to hydrogen if deemed appropriate by the General Assembly to include state owned and operated vehicles." The scope of this language is unclear. I cannot determine whether it refers to other publicly-owned vehicles, or perhaps to all vehicles in the state, whether publicly or privately owned.
 6. Section 2 (2) of your measure provides that the "General Assembly shall make all other and further rules and regulations by which the `Arkansas Transportation and Highway Department' shall distribute such funds and by which the cities and counties may appropriate and disburse funds in regard to the purpose and intent of this act." Similar language is repeated in Section 3 of your proposal. As I have told you before, this type of language is "confusing in that it suggests that the General Assembly, which is a legislative body, will be assigned the essentially executive task of promulgating `rules and regulations.'" See Op. Att'y. Gen. 2004-027 at 15.
 7. Section 4 of your measure provides that: "Disbursement of funds authorized by this act shall be limited to the appropriation to such agencies operating public transit and public school buses and/or other vehicles as the General Assembly shall authorize to include, but not limited to the fueling facilities, fuel production facilities, specialized tools and training which may be necessary. The restrictions of the State Procurement Law, and the General Accounting and Budgetary Procedures Law shall comply in regard to the disbursement of said funds and purchase of such vehicles, fueling facilities, tools and training for the purpose and intent of this act." This language is somewhat similar to standard language used in appropriation acts of the General Assembly. See, e.g., Acts 2005, No. 421, §§ 17 and 18 (appropriation for the Attorney General's Office). In addition to syntactical problems making its construction difficult, the insertion of this language into your measure is confusing, because your measure is not an appropriation act. A similar conclusion attends Section 5 of your measure, which provides that: "It is the intent of this act that any funds disbursed under the authority of the taxation and appropriations contained in this act shall be in compliance with the stated reasons for which this act is adopted which relate to its passage and adoption." Again, this language is confusing, as there are no "appropriations contained in this act."
The foregoing discussion of potential problems in the text of your proposed measure is not intended to be exhaustive. However, the ambiguities and uncertainties discussed above preclude me from performing my job of adequately summarizing your proposed amendment. I am reluctant to interject my own interpretation of your measure on these points into a ballot title or popular name given my uncertainty as to the precise underlying assumptions. These questions must be addressed in your measure and ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). Ordinarily, you could, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title to my office for review. I must note, however, that the language of your petition seeks placement of this measure on the November 7, 2006 general election ballot. Initiative petitions on statewide measures, with the requisite signatures, must be filed with the Secretary of State not less than four months before the election. See Arkansas Constitution, art. 5, § 1
("Initiative"). The deadline for filing your petition, with signatures, with the Secretary of State is therefore sometime in early July of this year. If you do not have a reasonable intention to actually collect and file such signatures by the deadline, any resubmissions of this petition this election cycle will unnecessarily encumber my extremely busy staff. Please bear this in mind when contemplating any resubmission of your measure.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
Enclosure